UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MAURILIO ZAPATA
VELASQUEZ,

    Petitioner,

v.

                                        Case No.: 8:13-cv-01960-T-24-EAJ
                                        Case No.: 8:05-cr-00099-T-24- EAJ

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner David Maurilio Zapata Velasquez's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (CV Doc. No. 1; CR Doc. No. 159.) Because review of the motion and the file in the case conclusively shows that Petitioner is not entitled to relief, the Court will not cause notice thereof to be served upon the United States Attorney but shall proceed to address the matter. 28 U.S.C. § 2255(b).

**I.    BACKGROUND**

On June 22, 2005, Petitioner pled guilty to Counts One and Two of the Indictment, which charged him with conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, and possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix, U.S.C. §§ 1903(a), 1903(g), and 1903(j), 21 U.S.C. § 960(b)(1)(B)(ii), and 18 U.S.C. § 2. (CR Doc. 1). Petitioner pled open and

did not object to the factual basis which contained the following facts: "At the time of the stop, the defendants were aboard a go fast vessel that was without nationality, that is, a vessel subject to the jurisdiction of the United States. The vessel was located approximately 100 nautical miles southeast of Roncador Bank, Columbia, in international waters." (CR Doc. 40). On September 22, 2005 Petitioner was sentenced to 135 months imprisonment. The pre-sentence investigation report, which was disclosed to Petitioner and his attorney, included the following facts in the offense conduct section:

> On February 27, 2005, a United States Coast Guard helicopter, dispatched from the Coast Guard Cutter *Seneca*, spotted a 40 foot open-hull "go-fast" vessel that was covered by a tarp in the Western Caribbean Sea. The vessel was located approximately 100 nautical miles southeast of Roncador Bank, Colombia, in international waters. . . . The Coast Guard boarding crew identified four crew members on the "go-fast" vessel . . . . The crew members were detained by the Coast Guard and identified as Romelio Inocencio Dawkins Whittaker, Antonio Mitchell Bent, David Maurilio Zapata Velasquez, Biscain Umbacia.

Petitioner did not object to these facts in writing or orally at sentencing. Petitioner appealed his sentence, and the Eleventh Circuit Court of Appeals affirmed on June 9, 2006. (CR Doc. No. 94, 141.)

## II.     SECTION 2255 MOTION

Seven years later, on July 29, 2013, Petitioner filed the present motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. Petitioner argues that his conviction should be vacated because the Maritime Drug Law Enforcement Act ("MDLEA") is unconstitutional as applied to him, the Court lacked jurisdiction to convict and sentence him, and because he is actually innocent of the crimes charged. In support of this contention, Petitioner cites the Eleventh Circuit's opinion in *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012). However, because his motion is untimely and lacks merit, it must be denied.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "established a mandatory, one-year 'period of limitation' for § 2255 motions, which runs from the latest of the following events:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Jones v. U.S.*, 304 F.3d 1035, 1037-38 (11th Cir. 2002) (citing 28 U.S.C. § 2255(f)(1)-(4)).

Petitioner appealed his sentence, and the Eleventh Circuit entered its judgment affirming the sentence on June 9, 2006. Petitioner had until September 7, 2006 to petition the Supreme Court for review. Sup. Ct. R. 13(1) (stating that a petition for writ of certiorari "is timely when it is filed . . . within 90 days after entry of the judgment"). Petitioner did not do so, and as such, his judgment of conviction became final on September 7, 2006. *Clay v. United States*, 537 U.S. 522, 527, 123 S. Ct. 1072, 1076, 155 L. Ed. 2d 88 (2003) (stating that after a non-meritorious appeal, "[f]inality attaches when th[e] [Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires").

Since the one-year limitations period began to run on September 7, 2006, Petitioner's deadline for filing a Section 2255 motion was September 7, 2007. However, Petitioner did not file the instant Section 2255 motion until July 29, 2013. As such, Petitioner's Section 2255 motion is time-barred unless he can show that he is entitled to a later filing date pursuant to 28 U.S.C. §2255(f)(2)-(4). To the extent that Petitioner relies on the Eleventh Circuit's November

3

6, 2012 opinion in *United States v. Bellaizac-Hurtado* to restart the one-year limitations period, such an argument is rejected. Because the *Bellaizac-Hurtado* opinion is an opinion of the Eleventh Circuit, and not an opinion of the Supreme Court, it cannot serve as a basis to restart the one-year limitations period. *See Vargas v. U.S.*, 2013 WL 424362, at *1 (M.D. Fla. Feb. 4, 2013).

Even if Petitioner's motion was timely, it would still be denied on the merits, because Petitioner's reliance on *Bellaizac-Hurtado* is misplaced. In that case, a panel of the Eleventh Circuit ruled, in an unpublished opinion, that the Maritime Drug Law Enforcement Act, 46 U.S.C. §§ 70503(a) and 70506, was unconstitutional as applied to the drug-trafficking activities of the defendants in that case, which occurred in the territorial waters of Panama. *See Bellaizac-Hurtado*, 700 F.3d at 1258. The panel reasoned, "[b]ecause drug trafficking is not a violation of customary international law, . . . Congress exceeded its power, under the Offences Clause [of the U.S. Constitution] when it proscribed the defendants' [drug trafficking] conduct in the territorial waters of Panama." *Id.*

*Bellaizac-Hurtado*, however, is factually distinguishable from the present case because it concerns Congress's ability to proscribe drug-trafficking activity in territorial waters. In his Section 2255 motion, Petitioner admits that he was in international waters when he states that he was arrested "approximately 100 Nautical miles southeast of Roncador Bank, Columbia, in international waters." (CV Doc. 2; CR Doc. 160). Further, at the time he pled guilty, Petitioner did not object to the factual basis which contained the fact that Petitioner was detained on a vessel located approximately 100 nautical miles southeast of Roncador Bank, Columbia, in international waters. At his sentencing, Petitioner did not object to the facts included in the

offense conduct section of the presentence investigation report—that he was detained a vessel located 100 nautical miles southeast of Roncador Bank, Columbia in international waters.

As explained by the Eleventh Circuit, the United States generally recognizes the territorial waters of foreign nations up to twelve nautical miles adjacent to their coasts:

> In *United States v. Marino–Garcia,* we concluded that "international law permits any nation to subject stateless vessels on the high seas to its jurisdiction," and, consequently, that "all persons aboard vessels engaged in drug trafficking that [fail] to unmistakably accede to the authority of a single sovereign while traversing the high seas [are] subject to the criminal jurisdiction of the United States." 679 F.2d 1373, 1383–84 (11th Cir.1982); *see also* 33 C.F.R. § 2.05–1 (defining "high seas" (with exceptions not relevant here) as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country"); 33 C.F.R. § 2.05–5(b) (defining "territorial seas" of foreign countries as "waters within the belt that is adjacent to its coast and whose breadth and baseline are recognized by the United States"). The United States generally recognizes the territorial seas of foreign nations up to twelve nautical miles adjacent to recognized foreign coasts. See United States: Proclamation on an Exclusive Economic Zone, 22 I.L.M. 461, 462 (March 10, 1983) ("The United States will respect only those territorial sea claims of others in excess of 3 nautical miles, to a maximum of 12 nautical miles, which accord to the U.S. its full rights under international law in the territorial sea."); United States Ocean Policy, Statement by President Reagan, 22 I.L.M. 464, 464 (March 10, 1983) ("[T]he United States will recognize the rights of other states in the waters off their coasts, as reflected in the [United Nations Convention on the Law of the Sea], so long as the rights and freedoms of the United States and others under international law are recognized by such coastal states."); *see also* United Nations Convention on the Law of the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1272, Part II § 2, Art. 3 ("Every State has the right to establish the breadth of its territorial sea up to a limit not exceeding 12 nautical miles, measured from baselines determined in accordance with this Convention.").

*U.S. v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003)(footnotes omitted). Because Petitioner was 100 nautical miles southeast of Columbia, he was in international, not territorial, waters.

### III. CONCLUSION

Accordingly, Petitioner's motion to vacate sentence is **DISMISSED** as untimely. The clerk is directed to close the civil case.

5

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of August, 2013.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Petitioner